Patsy Jean Meador CARNES, Appellant,

v.

Florence MEADOR, Individually and as
Administratrix of the Estate of Ray D.
Meador, Deceased, Appellee.

No. 18683.

Court of Civil Appeals of Texas,
Dallas.

Oct. 30, 1975.

Rehearing Denied Dec. 9, 1975.

Second Rehearing Denied Jan. 15, 1976.

Neil Brans, Dallas, for appellant.

Gayle E. Oler, Dallas, for appellee.

AKIN, Justice.

This suit for a declaratory judgment is between Ray D. Meador's widow, Florence Meador, as plaintiff, and his daughter by a former marriage, Patsy Jean Meador Carnes, as defendant. Three items of personal property are involved, all of which the widow (individually or as administratrix) claims as community property. The first two items are a $15,000 certificate of deposit and a $9,000 checking account, both in the name of "Ray D. Meador or Patsy Jean Meador Carnes." The third item is a $10,000 gift from the checking account which the deceased made two months before his death to the defendant daughter's husband. The defendant, after entering an unsuccessful plea in abatement, claimed all the property on three theories: Gift, joint tenancy with right of survivorship, and third-party beneficiary contract. The trial court awarded all three items to the widow. The daughter appeals.

Three principal questions are presented: (1) Should the plea in abatement have been sustained, because the administratrix did not obtain the probate court's consent to bring the suit in her administrative capacity? (2) Did either the certificate of deposit or the checking account signature card create a third-party beneficiary contract, raising a presumption that the deceased intended his daughter to have the funds? (3) Would disposition of the funds in the accounts to the defendant and the $10,000 gift to the son-in-law constitute constructive fraud as to the widow's community interest in those funds? We answer the first question in the negative; the second question in the negative as to the certificate of deposit but in the affirmative as to the checking account; and the third question in the affirmative. Accordingly, we reverse and remand.

## Plea in Abatement

Defendant argues that plaintiff must obtain an order of the probate court granting her permission to sue in her capacity as administratrix and that since plaintiff failed to do so the court erred in overruling her plea in abatement. We cannot agree. Tex.Rev.Civ.Stat.Ann. art. 1981 (Vernon 1964) provides that suits for recovery of personal property may be instituted by executors, *administrators*, or guardians. Furthermore, Tex.Prob.Code Ann. § 233 (Vernon 1956) imposes a duty on the administratrix to "collect all claims and debts due the estate and to recover possession of all property of the estate . . . ." We hold that this section of the Probate Code gives the administratrix authority to institute all suits necessary for the preservation of the estate pending distribution. *See Kriegel v. Scott*, 439 S.W.2d 445, 446 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.); *Ravkind v. Bergman*, 342 S.W.2d 61 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n. r. e.); *Barfield v. Miller*, 70 S.W.2d 632 (Tex.Civ.App.—Amarillo 1934, writ dism'd); *see also Duenkel v. Amarillo Bank & Trust Co.*, 222 S.W. 670 (Tex.Civ.App.—Amarillo 1920, writ ref'd).

Defendant also contends that plaintiff had no authority to bring suit in her individual capacity because she was an heir. We cannot agree. Since plaintiff owned one-half of the community property in her own right and not as heir, she had a right to sue in her individual capacity for her one-half interest. *Kreis v. Kreis*, 36 S.W.2d 821, 827 (Tex.Civ.App.—Amarillo 1931, writ dism'd). We conclude, therefore, that the trial court correctly overruled defendant's plea in abatement.

## Character of the Funds

Decedent opened the checking account in the name of "Ray D. Meador or Patsy Jean Meador Carnes," before his marriage to plaintiff on October 13, 1967. At the time of the marriage, $7,238 was in the checking account. Thereafter, and until the time of his death the decedent made withdrawals and deposits to this account. Several months before his death, decedent gave his son-in-law, C. E. Carnes, $10,000 by check

·from this account. At his death, the balance was $9,000.

A certificate of deposit in the sum of $10,000 was purchased in the name of "Ray D. Meador or Patsy Jean Meador Carnes" on July 13, 1967, before decedent's marriage to plaintiff. On July 13, 1968, after his marriage to plaintiff, an additional $5,000 was added to this initial $10,000 to purchase a $15,000 certificate also in the same names. This certificate of deposit was renewed annually with the last maturity date being July 13, 1972. Plaintiff and decedent separated in July 1970, but did not divorce or enter into a written separation agreement. Each lived apart, paid his or her own bills, and filed separate income tax returns. Decedent died intestate on July 21, 1972.

■ Although the funds of decedent at the time of his marriage to the plaintiff were his separate property, all funds acquired thereafter were prima facie community property. Tex. Family Code Ann. § 5.02 (Vernon 1973). The jury found that the funds in the certificate of deposit and the funds in the checking account were so commingled with community property that the separate property could not be traced and identified. When separate property becomes so commingled with the community property that it cannot be identified, the separate property becomes community property. *Stanley v. Stanley*, 294 S.W.2d 132, 136 (Tex.Civ.App.—Amarillo 1956, writ ref'd n. r. e.), *cert. denied*, 354 U.S. 910, 77 S.Ct. 1296, 1 L.Ed.2d 1428 (1957). No attack was made on the jury findings of commingling or inability to identify separate funds. To overcome the statutory presumption of community property, the burden was upon defendant to trace the property. If fact issues were raised, defendant also had the burden to request special issues that, if answered favorably, would rebut this presumption. *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965). This she failed to do. In view of the jury findings, we must treat these funds as community property for the purpose of this appeal.

### Gift

■ Defendant contends that the opening of the account and the purchase of the certificate of deposit in the name of decedent "or" defendant Carnes constituted a gift of the funds by decedent to defendant Carnes. We cannot agree. The requisites of a valid *inter vivos* gift are "a clear intent on the part of the donor to make such gift, accompanied by a present delivery . . . of the property, of such character as to divest the donor of the title, *dominion, and control over it,* and an acceptance by the donee." [Emphasis added.] *Giles v. Giles*, 94 S.W.2d 208, 210 (Tex.Civ.App.—Austin 1936, writ dism'd). Since the jury found that decedent alone exercised dominion and control over the funds in the certificate of deposit and in the checking account, defendant's contention of a gift is precluded.

### Joint Tenancy with Right of Survivorship

■ Defendant argues that she is entitled to recover the funds as a joint tenant with a right of survivorship. Tex.Prob. Code Ann. § 46 (Vernon Supp.1974). We cannot agree. The certificate contains no language of rights of survivorship. Although the checking account uses the words "or to the survivor to sign" this language is not tantamount to the language that the account is held by them as joint tenants with the right of survivorship. *Quilter v. Wendland*, 403 S.W.2d 335, 338 (Tex.1966); *Krueger v. Williams*, 163 Tex. 545, 548, 359 S.W.2d 48, 51 (1962). We conclude, therefore, that § 46 of the Probate Code does not apply.

### Third-Party Beneficiary Contract

■ A. *Certificate of Deposit.* Defendant contends that she is entitled to receive these funds on the theory that she was the third-party beneficiary of a contract between decedent and the bank because the certificate was in the name of "Ray D. Meador or Patsy Jean Meador Carnes," with either having the right to withdraw

these funds. No reference to the rights of a "survivor" appeared in the language of the certificate. Although the word "or" may authorize the alleged beneficiary to make withdrawals from the account, it is not tantamount to expression of an intent that defendant should receive these funds at her father's death. This word alone does not give rise to a presumption of intention that the survivor should have title to the funds. *Forehand v. Light,* 452 S.W.2d 709, 710 (Tex.1970); *Steinbach v. Kieke,* 451 S.W.2d 956, 959 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ). Consequently, the trial court properly denied defendant any interest in these funds.

■ B. *Checking Account.* The language on the signature card of the checking account is: "Bank is hereby authorized to recognize either of the signatures . . . in the payment of funds or the transaction of any other business. Either one or both or to the *survivor* to sign checks." [Emphasis added.] This was signed by both decedent and defendant Carnes. The key word here is "survivor." *Forehand v. Light, supra.* We hold that the language on this account card creates a presumption that the deceased intended to enter into a third-party beneficiary contract with the bank under which the defendant was to receive the funds in this account at his death. The burden of proof is, therefore, upon plaintiff to rebut this presumption. *Krueger v. Williams, supra,* 359 S.W.2d at 58; *Quilter v. Wendland, supra,* 403 S.W.2d at 337; *Brown v. Lane,* 383 S.W.2d 649, 650 (Tex. Civ.App.—Dallas 1964, writ ref'd); *In re Staver's Estate,* 218 Wis. 114, 260 N.W. 655, 658 (1935); *see* East, *Survivorship in "A or B" Bank Accounts: Application of the Parol Evidence Rule,* 25 Baylor L.Rev. 336 (1973). This plaintiff failed to do. Indeed, the question of whether the placing of defendant's name on the signature card was solely for decedent's benefit was submitted to the jury and answered in the negative. The trial court disregarded this finding as immaterial, which action is not assigned as error. However, plaintiff failed to obtain a finding rebutting the presumption that decedent intended defendant to have the funds under a third-party beneficiary contract. *Krueger v. Williams, supra.* Accordingly, we sustain defendant's fourth point of error which asserts that the language on the signature card of the account raised a presumption that decedent intended defendant to have the funds under a third-party beneficiary contract with the bank.

## Constructive Fraud

■ Although a spouse has the right to dispose of community property under his or her control under Tex. Family Code Ann. § 5.22 (Vernon 1973), he may not dispose of his spouse's interest in community funds if actual or constructive fraud exists. Without specific proof of fraudulent intent, Texas courts nevertheless have set aside any gift of community funds as a constructive fraud on the other spouse if the gift is capricious, excessive or arbitrary. *Givens v. Girard Life Insurance Co.,* 480 S.W.2d 421 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.).

■ Constructive fraud is the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship. *Archer v. Griffith,* 390 S.W.2d 735, 740 (Tex.1964). A trust relationship exists between husband and wife as to that community property controlled by each spouse. *Brownson v. New,* 259 S.W.2d 277, 281 (Tex.Civ.App.—San Antonio 1953, writ dism'd). Thus, a presumption of constructive fraud arises when a spouse unfairly disposes of the other spouse's one-half interest in community property. *Reaney v. Reaney,* 505 S.W.2d 338, 340 (Tex.Civ.App.—Dallas 1974, no writ). The burden of proof is, therefore, upon the disposing spouse or his donee to prove the fairness of the disposition of the other spouse's one-half community ownership. *Murphy v. Metropolitan Life Insurance Co.,* 498 S.W.2d 278, 282 (Tex.Civ.App. —Houston [14th Dist.] 1973, writ ref'd n. r. e.); *Davis v. Prudential Insurance Company*

of America, 331 F.2d 346 (5th Cir. 1964); see Huie, *Community Property Laws as Applied to Life Insurance*, 18 Texas L.Rev. 121 (1940). Implicit in these holdings is the recognition that each spouse owns a one-half interest in all community funds regardless of which spouse has management and control.[1] Johanson, *Revocable Trusts and Community Property: The Substantive Problems*, 47 Texas L.Rev. 537, 566 (1969).

■ In determining if a presumption of constructive fraud exists as to the surviving spouse, we consider whether the community funds purportedly transferred to defendant Carnes and her husband were in reasonable proportion to the remaining community assets. *Givens v. Girard Life Insurance Co., supra*; *Murphy v. Metropolitan Life Insurance Co., supra*; see *Cohrs v. Scott*, 161 Tex. 111, 121, 338 S.W.2d 127, 133 (1960). Here, the total community funds were approximately $34,000, including the gift to the defendant's husband of $10,000, the $15,000 in the certificate of deposit, and the $9,000 in the checking account. Plaintiff wife had no other community property and lived entirely on proceeds from social security. By a $10,000 gift to defendant's husband and by a presumptive third-party beneficiary contract with the bank for the benefit of defendant with respect to the $9,000 in the checking account, decedent disposed of $19,000 in community funds, which was $2,000 in excess of his one-half interest. Such dispositions raise a presumption of constructive fraud. Accordingly, we must determine how this presumption affects the rights of the present parties.

■ If a spouse disposes of community property in fraud of the other spouse's rights, the aggrieved spouse has a right of recourse first against the property or estate of the disposing spouse; and, if that proves to be of no avail, then the aggrieved spouse may pursue the proceeds to the extent of her community interest into the hands of the party to whom the funds have been conveyed. *Hartman v. Crain*, 398 S.W.2d 387, 389 (Tex.Civ.App.—Houston 1966, no writ); see *Cohrs v. Scott, supra*, 338 S.W.2d at 133. See also Quilliam, *Gratuitous Transfers of Community Property to Third Persons*, 2 Tex.Tech.L.Rev. 23, 40 (1970). Accordingly, plaintiff, in her individual capacity, is entitled to reimbursement from decedent's share of the community estate for her one-half interest in the funds disposed of in fraud of her rights, and, to the extent that this share of the community funds remaining is insufficient for full reimbursement, she is entitled to recovery against defendant out of the funds in defendant's hands. We do not determine whether the gift of $10,000 to defendant's husband should be charged with any part of this reimbursement, since he is not a party here, and the question has not been briefed in this court.

■ Since the case must be reversed on defendant's fourth point of error because of the trial court's error in denying defendant her interest in the checking account, we must determine whether we should render judgment in her favor, or remand for a new trial. We conclude that the entire case should be remanded to a new trial under Tex.R.Civ.P. 434 because additional matters of fact must be ascertained and the matter to be decreed is uncertain. We have held that the signature card for the checking account raises only a presumption that the survivor was entitled to the funds, and we cannot say that the facts that bear on rebuttal of this presumption have been fully developed. The existence and effect of con-

1. Thus, in *Land v. Marshall*, 426 S.W.2d 841, 844 (Tex.1968), the supreme court expressly recognized this principle when it stated with respect to an *inter vivos* trust of community property:

"The court of civil appeals held that the Marshall Trust failed because Marshall did not have the right to make a testamentary disposition of his wife's community property. This is a correct legal principle."

The court was, however, unable to dispose of this case on this principle because the fraud-on-the-wife theory had not been preserved on appeal.

structive fraud should be finally determined only after development of all the facts. The record raises other questions not properly before us for decision such as the amount of decedent's interest in the community estate available for reimbursement to plaintiff. Consequently, in the interest of justice, we reverse and remand the entire case for a new trial. *Morrow v. Shotwell*, 477 S.W.2d 538, 541 (Tex.1972).

Reversed and remanded.

## ON MOTION FOR REHEARING

Plaintiff argues that our holding that the language on the signature card of the checking account created a presumption of a third party beneficiary contract for defendant Carnes's benefit is immaterial. She contends that the jury finding that it would be unfair to Meador's community property rights to give the entire proceeds of the account to Carnes is a constructive fraud on Meador. She then equates constructive fraud with actual fraud as defined in Tex.Bus. & Comm.Code Ann. § 24.02 (Vernon 1968) and concludes that since constructive fraud was found, the holding of the Supreme Court in *Krueger v. Williams*, 163 Tex. 545, 359 S.W.2d 48 (1962) is inapplicable. We cannot agree.

Section 24.02 requires an *intent* to defraud by the transferor-grantor. *See Hunter v. Pitcock*, 346 S.W.2d 509 (Tex.Civ. App.—Fort Worth 1961, no writ); *cf. Hawes v. Central Texas Production Credit Ass'n*, 492 S.W.2d 714 (Tex.Civ.App.—Austin), *affirmed*, 503 S.W.2d 234 (Tex.1973). Constructive fraud does not require the intent to defraud [*Peiser & Co. v. Peticolas*, 50 Tex. 638, 646 (1879)] required under § 24.02; instead it is an equitable doctrine employed by courts to rectify an injury resulting from the breach of a fiduciary relationship. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964). Thus, a finding of unfairness is not tantamount to a finding of intent to defraud under § 24.02. Since no intent to defraud was proved, § 24.02 does not apply.

Neither do we agree that a capricious, excessive or arbitrary transfer of community property is wholly void. It is only voidable at the election of the other spouse, and may be avoided only in so far as it deprives her of her community interest. It should be allowed to stand to the extent that the surviving spouse can be reimbursed out of the remaining assets of the decedent's estate. Thus, to that extent, the loss occasioned by such reimbursement will fall on the decedent's heir or devisee rather than on his donee, in accordance with the principle that a person has complete power to dispose of his own property during his lifetime. Consequently, we adhere to the direction in our original opinion that plaintiff should first be reimbursed from decedent's share of the community estate for dispositions of community property found to be capricious, excessive, or arbitrary, and then if the presumption of defendant's survivorship right with respect to the bank account is not rebutted, plaintiff should be allowed further reimbursement from those funds.

Motions overruled.